**STATE of Missouri, Respondent,**

**v.**

**Albert FINCH TN: Elbert Jordan, Appellant.**

**No. 54009.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1988.

Application to Transfer Denied
Oct. 18, 1988.

Holly G. Simons, Henry B. Robertson, Asst. Public Defenders, St. Louis, for appellant.

William L. Webster, Atty. Gen., John M. Morris, L. Timothy Wilson, Asst. Attys. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his jury convictions of first degree robbery, § 569.020, RSMo 1986, and armed criminal action, § 571.015, RSMo 1986, for which he was sentenced as a prior and persistent offender to concurrent thirty-year terms. We affirm.

The sufficiency of the evidence to support the convictions is not in dispute. A review of the evidence in the light most favorable to the verdict discloses the following: On February 3, 1987, at approximately 6:30 p.m., Mrs. Marcia Goldsby stopped at an establishment, located at Kingshighway and Minerva, in the City of St. Louis, to cash a check. As Mrs. Goldsby and her twelve-year-old daughter, Debra, walked back to their car, two armed men chased them. Before they could close the car door, one of the men grabbed it and demanded money, threatening to shoot Mrs. Goldsby if she did not comply. Mrs. Goldsby attempted to hand the man her purse, but he wanted the money only. At this point, he instructed the other man to shoot Debra if Mrs. Goldsby did not cooperate. Debra retrieved Mrs. Goldsby's wallet, which had fallen on the floor, and gave the man $279. Thereafter, the two men fled.

Mrs. Goldsby gave the police a description of her assailants, one description of which matched the description of defendant. Mrs. Goldsby chose the defendant's picture from a group of photographs as one of her assailants. Thereafter, she identified defendant out of a lineup as the man who pointed a gun at her and demanded her money. At a separate lineup, Debra said defendant looked like the robber.

Defendant presented an alibi defense at trial. His mother, brother, two sisters and girlfriend testified in his behalf.

In his sole point on appeal defendant asserts the trial court erred in overruling his challenge to the State's use of its peremptory strikes to eliminate two of the four remaining black jurors without requiring the State to give racially neutral explanations for the strikes.

The venire panel consisted of thirty whites and six blacks. Of those six, two of the blacks were stricken for cause on defendant's motion. The State utilized its peremptory strikes to strike two of the remaining blacks, leaving two blacks on the jury. Defendant challenged the State's strikes, asserting they were racially motivated; however, the trial court found defendant failed to establish a prima facie case of discrimination and did not require the State to provide racially neutral reasons for the strikes.

The United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) set out the evidentiary standards for a defendant who asserts purposeful discrimination by the State in exercising its peremptory strikes. *Batson* was further explained by the Missouri Supreme Court in *State v. Antwine*, 743 S.W.2d 51, 53–67 (Mo.banc 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

> [A defendant] may establish a prima facie case of discrimination by showing that (1) defendant is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and (3) that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.* at 64 [13] (quoting *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722–23).

It is undisputed that defendant satisfied the first two elements necessary to establish a prima facie case. Defendant is black and the State utilized two of its peremptory strikes to remove members of the black race from the venire. Regarding the third element, defendant contends the State was required under *Antwine* to come forth with neutral explanations for the strikes for the court to consider in determining whether there was a prima facie case of discrimination.

In *Antwine*, the Missouri Supreme Court "expanded upon *Batson* by directing trial courts to consider, in the process of determining the existence of the third element of the *prima facie* case, the prosecutor's explanations of his peremptory strikes." *State v. Griffin*, 756 S.W.2d 475, 481 (Mo.banc 1988); *see Antwine*, 743 S.W. 2d at 64 [14]. However, *Antwine*'s expansion of *Batson* is not applicable to the case at hand because *Antwine* was handed down subsequent to the conclusion of his case, and *Antwine* "indicates that its expansion of *Batson* is to be applied prospectively only." *Griffin*, 756 S.W.2d at 482. Therefore, the State was not required to come forward with neutral explanations for the strikes unless defendant established a prima facie case of discrimination. *Id.* at 481–482.

Defendant offers no persuasive arguments showing sufficient facts and circumstances to prove the State's actions in striking the blacks from the panel were racially motivated. We note that the percentage of blacks on the jury was identical to the percentage of blacks on the venire. Although it is true the State exercised two of its peremptory challenges to strike blacks, it is equally true that two other blacks who the State could have removed were not stricken. This removes any inference of impermissible discrimination. *See Griffin*, 756 S.W.2d at 482 (the fact that three blacks who could have been stricken were allowed to remain on the venire, undercut any inference of impermissible discrimination).

Judgment affirmed.

GARY M. GAERTNER, P.J., and REINHARD, J., concur.